ANGELO M. SCACCIA *vs.* STATE ETHICS COMMISSION.

Suffolk. March 10, 2000. - May 5, 2000.

Present: ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Public Officer. State Ethics Commission. Statute,* Construction. *Bribery. Gratuity Statute. Gift Statute. Financial Disclosure Law. Conflict of Interest. Words,* "Gift."

Discussion of the Federal gratuity statute, 18 U.S.C. § 201(c)(1)(A) (1994), and its interpretation in *United States* v. *Sun-Diamond Growers of Cal.,* 526 U.S. 398, 414 (1999). [354-355]

This court concluded that, to establish a violation of the State gratuity statute, G. L. c. 268A, § 3 (*a*) and (*b*), a link must be established between a gratuity and an official act. [355-357]

Where the record of an administrative proceeding before the State Ethics Commission failed to establish that certain gifts of substantial value, given by lobbyists, were received by a State representative "for or because of any official act . . . performed or to be performed" by him, the commission's determination that the representative had violated the gratuity statute, G. L. c. 268A, § 3 (*b*), was not supportable [357]: however, the record did warrant the commission's determinations that the acceptance of the same gifts (meals and golf fees) was a violation of the gift statute, G. L. c. 268B, § 6 [357-358]; that the failure to report the value and source of the gifts was a violation of the financial disclosure law, G. L. c. 268B, § 7 [358]; and that the representative's actions in the circumstances violated G. L. c. 268A, § 23 (*b*) (3), the public officials' code of conduct statute [358-359].

CIVIL ACTION commenced in the Superior Court Department on December 17, 1996.

The case was heard by *Herman J. Smith, Jr.,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Morris M. Goldings* (*Brenda A. Buan* with him) for the plaintiff.

*Judy A. Levenson* (*Stephanie S. Lovell,* Special Assistant Attorney General, with her) for the defendant.

IRELAND, J. After an administrative hearing, the State Ethics Commission (commission) determined that State Representative

Angelo M. Scaccia violated the gratuity statute, G. L. c. 268A, § 3 (b); the gift statute, G. L. c. 268B, § 6; the financial disclosure law, G. L. c. 268B, § 7; and the public officials' code of conduct statute, G. L. c. 268A, § 23 (b) (3), by accepting free meals and rounds of golf from tobacco and insurance industry lobbyists without disclosing them on his statement of financial interests. The commission imposed a civil fine of $3,000 and Scaccia appealed to Superior Court. After a Superior Court judge upheld the commission's decision, Scaccia again appealed, and we granted his application for direct appellate review. A violation of the gratuity statute, G. L. c. 268A, § 3 (b), requires that the gratuity must be received "for or because of any official act . . . performed or to be performed." Because the administrative record fails to establish a link to any official act performed by Scaccia, we vacate that portion of the Superior Court decision regarding the gratuity statute. The record, however, clearly supports a finding that Scaccia violated the gift statute, the financial disclosure law, and the public officials' code of conduct statute, and we accordingly affirm those portions of the Superior Court judge's decision. In light of our decision, we remand the case to the Superior Court for a redetermination of the civil penalty owed by Scaccia.

1. *Facts and procedural history.* We state the facts as found by the commission. See *Zora v. State Ethics Comm'n,* 415 Mass. 640, 643 (1993). During the relevant time period, 1991-1993, Scaccia served as house chairman of the joint committee on taxation. In July, 1991, Scaccia, along with his wife and son, attended a conference of the Council of State Governments (CSG) in Hauppauge, New York. The CSG holds periodic conferences in order to bring elected officials and private sector representatives together so that they may discuss "common interests." Scaccia's campaign committee paid for many of his expenses related to the conference, including his transportation, accommodations, and $64.50 toward his meals.

On July 29, 1991, during the CSG conference, Theodore Lattanzio, a lobbyist for Philip Morris USA (Philip Morris), hosted a dinner for eleven people, including other tobacco industry lobbyists, elected officials, and their family members.[1] Scaccia, his wife, and his son attended the dinner, which was not a part of the CSG conference. Lattanzio paid for the dinner, of which

---

[1]Philip Morris sells tobacco products in Massachusetts, and is subject to regulation and taxation in Massachusetts.

$176 was attributable to Scaccia and his family.[2] On July 30, 1991, also at the CSG conference, Lattanzio invited a group of lobbyists and elected officials on an outing to play golf, and Scaccia and his son participated. Lattanzio paid for Scaccia and his son's golf fees, which totaled $112. Lattanzio was not a friend of Scaccia and thus he did not pay for either the dinner or the golf out of friendship.

In March, 1993, Scaccia, along with his son, attended a National Conference of Insurance Legislators (NCOIL) conference held on Amelia Island in Florida. On March 11, 1993, Scaccia played golf with two other State Representatives, Representatives Thomas Walsh and William Cass; and F. William Sawyer, a lobbyist for John Hancock Mutual Life Insurance Company (John Hancock). Sawyer paid for the golf, $90 of which was attributable to Scaccia.[3] The next day, March 12, 1993, Scaccia, his son, State Representatives Kevin Honan and Cass, and Sawyer played golf. Sawyer paid for Scaccia's golf, valued at $103. Sawyer and Scaccia were not personal friends.

That same day, March 12, 1993, Sawyer drove Scaccia, his son, Cass, and Walsh to the Ritz-Carlton Hotel. Scaccia and his son ate dinner at The Grill, the restaurant at the Ritz-Carlton, along with other Massachusetts State Representatives, William Carroll, lobbyist for the Life Insurance Association of Massachusetts, Inc. (LIAM), and several other insurance industry lobbyists. Scaccia had been told that the Ritz-Carlton dinner was sponsored by Carroll and other lobbyists; the dinner was not a part of the NCOIL conference. Carroll paid for the dinner and Scaccia and his son's share amounted to $118.[4] In total, the commission found that Scaccia and his family received nearly

[2] The commission divided the restaurant bill evenly to calculate a per person amount.

[3] Sawyer's lobbying activities have been the subject of a number of recent cases. He was tried and convicted of mail and wire fraud, interstate travel to commit bribery, and conspiracy in Federal District Court, but those convictions were vacated based on overbroad jury instructions. See *United States* v. *Sawyer*, 85 F.3d 713, 719-720, 741 (1st Cir. 1996). Sawyer then pleaded guilty to one count of mail fraud. Sawyer's conviction was later vacated on a writ of coram nobis, based on *United States* v. *Sun-Diamond Growers of Cal.*, 526 U.S. 398 (1999). See *United States* v. *Sawyer*, 74 F. Supp. 2d 88 (D. Mass 1999).

[4] The commission calculated this amount by dividing the cost of the meal evenly after subtracting the cost of alcohol. Scaccia does not drink alcohol and his son was nineteen years old at the time.

$600 in free meals and golf from lobbyists in the period from 1991 to 1993.

As a State representative, Scaccia voted on and took other official action on proposed legislation relating to the tobacco and insurance industries. As chairman of the joint committee on taxation, Scaccia had an extensive role in scheduling hearings and in the committee's decisions to advance bills to the full General Court.

On June 20, 1995, the commission issued an order to show cause against Scaccia. After an administrative hearing, during which Scaccia invoked his privilege under the Fifth Amendment to the United States Constitution against self-incrimination, the commission determined that Scaccia had violated the gratuity, public officials' code of conduct, gift, and financial disclosure laws and imposed a $3,000 civil penalty. A Superior Court judge upheld the decision of the commission, Scaccia appealed and we granted his application for direct appellate review.

2. *G. L. c. 268A, § 3 (b).* The gratuity statute, defined in G. L. c. 268A, § 3 (*a*), as to the giver, and § 3 (*b*) as to the recipient, requires that something of "substantial value" be given, offered, or promised to a public official "for or because of any official act performed or to be performed" by such public official; or demanded, sought, received, accepted, or agreed to be received by a public official "for or because of any official act or act within his official responsibility performed or to be performed" by such public official. Scaccia argues that the commission failed to prove a link between the free meals and golf the lobbyists provided and any official act undertaken by him.

While the commission's considerable expertise regarding the gratuity statute is entitled to some deference, interpretation of the statute is ultimately a question of law reserved for our determination. See *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). Although G. L. c. 268A, § 3, inserted by St. 1962, c. 779, § 1, was enacted into law before the Federal gratuity statute, it is very similar to the Federal statute. See, e.g., Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650; R. Braucher, Conflict of Interest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott 7 (R. Pound, E. Griswold, A. Sutherland eds. 1964) ("the basic pattern of the recommended legislation followed that of H.R. 8140"); Buss, The Massachusetts Conflict-of-Interest Statute: An Analysis, 45 B.U.L.

Rev. 299, 302-303 (1965); *United States* v. *Sawyer*, 85 F.3d 713, 736 (1st Cir. 1996). Indeed, the language of the two statutes is virtually identical.

In light of the similarity between the Massachusetts and Federal statutes, as well as the legislative history of the Massachusetts statute, we look to Federal law for guidance in construing § 3 (*a*) and (*b*).[5] See *Commonwealth* v. *Hartsgrove*, 407 Mass. 441, 445 (1990); *Packaging Indust. Group, Inc.* v. *Cheney*, 380 Mass. 609, 611 (1980) (when Massachusetts statute adopts language of Federal statute, it is ordinarily given same construction as cognate Federal statute).

Recently, the United States Supreme Court, interpreting the Federal gratuity statute (18 U.S.C. § 201[c][1][A] [1994]), ruled that the government must "prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." *United States* v. *Sun-Diamond Growers of Cal.*, 526 U.S. 398, 414 (1999) (*Sun-Diamond*).[6] In a unanimous opinion, the United States Supreme Court reasoned that the "insistence upon an 'official act,' carefully defined, seems pregnant with the requirement that some particular official act be identified and proved." *Id.* at 406. The United States Supreme Court emphasized that "it seems to us most implausible that Congress intended the language of the gratuity statute . . . to pertain to the office rather than (as the language more naturally suggests) to *particular* official acts" (emphasis original). *Id.* at 409.[7]

In light of *Sun-Diamond*, it is necessary to establish a link between a gratuity and an official act. We therefore must give content to the "for or because of any official act" portion of the statute. Chapter 268A is a comprehensive measure designed to

---

[5]Authority from other States is not as helpful because those statutes contain language significantly different from the Massachusetts gratuity statute. See, e.g., *United States* v. *Frega*, 179 F.3d 793, 805 (9th Cir. 1999), cert. denied, 528 U.S. 1191, and cert. denied sub nom. *Adams* v. *United States*, 529 U.S. 1029 (2000) (California law); *DiPrete* v. *Morsilli*, 635 A.2d 1155, 1163 (R.I. 1994).

[6]The Superior Court judge did not have the benefit of the *Sun Diamond* case.

[7]The United States Supreme Court rejected an interpretation pressed by the government that would have construed the gratuity statute to reach "any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be *in a position to act* favorably to the giver's interests" (emphasis original). *Id.* at 405.

prevent the improper use of influence on public officials. See *Commonwealth* v. *Canon*, 373 Mass. 494, 503 (1977) (Liacos, J., dissenting), cert. denied, 435 U.S. 933 (1978). A gratuity violation is, essentially, a lesser included offense of bribery. Under G. L. c. 268A, § 2 (*a*) and (*b*), bribery requires proof of "corrupt intent," an element missing from the gratuity statute. *Commonwealth* v. *Dutney*, 4 Mass. App. Ct. 363, 369 (1976). Bribery also typically involves a quid pro quo, in which the giver corruptly intends to influence an official act through a "gift," and that "gift" motivates an official to perform an official act. In effect, what is contemplated is an exchange, involving a two-way nexus. A gratuity in violation of the statute, in contrast, can either be provided to an official as a reward for past action, to influence an official regarding a present action, or to induce an official to undertake a future action. See *United States* v. *Schaffer*, 183 F.3d 833, 841-842 (D.C. Cir. 1999). Only a one-way nexus need be established for a gratuity violation.

Certainly, a lobbyist's cultivation of friendship with legislators is legitimate and lawful. But when that cultivation involves hospitality or other gift giving above the permissible amount, it becomes suspect. Coupled with an intent that the gift influence a specific act, or, in the case of the recipient, when those gifts have an influence on an official act or constitute a reward for official acts already undertaken, such gifts constitute a violation of the gratuity statute. See *United States* v. *Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996) (describing how, when gifts from lobbyists are considered, "the line between the merely unattractive and actually criminal conduct is blurred").

Therefore, in order for the commission to establish a violation of G. L. c. 268A, § 3 (*a*) and (*b*), there must be proof of linkage to a particular official act, not merely the fact that the official was in a position to take some undefined or generalized action, such as holding a hearing on proposed legislation that, if passed, could benefit the giver of the gratuity. "To hold otherwise would mean that any time a regulated entity became aware of any inchoate government proposal that could affect its interests, and subsequently provided something of value to a relevant official, it could be held to violate the gratuity statute in the event that the inchoate proposal later appeared in a more concretized form." *United States* v. *Schaffer*, *supra* at 844. Cf. *Massachusetts Bar Ass'n* v. *Cronin*, 351 Mass. 321, 324-325 (1966) (proof that public official requested gratuity on

understanding that official would give false testimony at confirmation hearing established violation of gratuity statute).

We recognize that direct evidence regarding either the intent to influence a specific act or that an official was influenced in the undertaking of a specific act is difficult to obtain. In these circumstances, therefore, "the trier of fact can do no more than ascribe an intent [to influence or be influenced] on the basis of the circumstances surrounding" the gift. *United States* v. *Schaffer, supra* at 843; *United States* v. *Woodward,* 149 F.3d 46, 57 (1st Cir. 1998), cert. denied, 525 U.S. 1138 (1999). Accordingly, evidence regarding the subject matter of pending legislation and its impact on the giver, the outcome of particular votes, the timing of the gift, or changes in a voting pattern would be some of the appropriate factors in proving a violation.

Here, the commission argues that there was substantial evidence linking each gratuity provided to Scaccia to one or more identifiable official acts performed or to be performed by him. A close reading of the administrative record, however, does not disclose such official acts. The commission's proof of a connection between each gratuity and an official act is based only on Scaccia's regular duties as an elected official.

For example, the commission stated in its decision that "Scaccia acted officially regarding this legislation [which concerned taxation of insurance companies] after the March 11 and 12 golf, including holding Committee hearings on such legislation." The commission did not specify how Scaccia voted on these particular pieces of proposed legislation. Indeed, the administrative record shows that Scaccia took a position contrary to that advocated by the insurance industry. In short, there are no findings, and no evidence in the record, that the gratuities influenced any specified official act by Scaccia. Accordingly, we vacate that portion of the Superior Court's decision upholding the commission's finding of a violation of the gratuity statute.

3. *G. L. c. 268B, § 6.* The gift statute provides that "no public official . . . or member of such person's immediate family shall knowingly and wilfully solicit or accept from any legislative agent [lobbyist], *gifts* with an aggregate value of one hundred dollars or more in a calendar year" (emphasis added).

Relying on the language of G. L. c. 3, § 43, which lists meals, gifts, and entertainment separately, Scaccia contends that free meals and golf are not gifts in the context of G. L. c. 268B,

§ 6. This argument misses the mark, however, because G. L. c. 268B, § 1 (*g*), defines a gift as "a payment, entertainment, subscription, advance, services or anything of value." Clearly, the plain meaning of the word "entertainment" would include a social round of golf. Further, the term "anything of value" creates a broad category that would include meals. While it is accurate that G. L. c. 3, § 43, lists meals as separate from "gifts," it also lists "entertainment" as separate from "gifts," although entertainment is included in the definition of "gift" in G. L. c. 268B, § 1 (*g*). Evidently the Legislature wrote these statutes in ways that utilized the term "gift" differently. See *United States* v. *Sawyer*, 878 F. Supp. 279, 284 (D. Mass. 1995), aff'd, 85 F.3d 713 (1st Cir. 1996) (same word can be used differently in two different statutes whether by intention or mistake). Accordingly, because golf and meals are either "entertainment" or "anything of value," they are gifts within the meaning of G. L. c. 268B, § 6. Accordingly, we affirm that portion of the Superior Court's decision upholding the commission's determination that Scaccia violated the gift statute.

4. *G. L. c. 268B, § 7.* General Laws c. 268B, § 5 (*g*) (5), mandates that public officials, such as Scaccia, "shall disclose, to the best of their knowledge . . . the name and address of the donor, and the fair market value, if determinable, of any gifts aggregating more than one hundred dollars in the calendar year, if . . . the source of such gift(s) is a person having a direct interest in legislation." Section 7 provides for civil penalties against "[a]ny person . . . who files a false statement of financial interests under section five . . . ."

Scaccia concedes that he did not report any gifts from Lattanzio, Sawyer, or Carroll. Rather, he argues that, because the gift statute prohibits gifts from lobbyists, he would not need to disclose these prohibited gifts. It does not follow, however, that because one violates the law, one does not need to report the underlying facts from which a violation could be found. Cf. *James* v. *United States*, 366 U.S. 213, 216-219 (1961) (Federal income tax requires reporting all income whether lawful or unlawful). We therefore affirm the portion of the Superior Court's decision that Scaccia violated the financial disclosure law.

5. *G. L. c. 268A, § 23 (b) (3).* The public official's code of conduct statute provides that "[n]o current officer . . . shall knowingly . . . act in a manner which would cause a reason-

able person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of official duties . . . ." G. L. c. 268A, § 23 (*b*) (3). Scaccia argues that, because he did not act in a way consistent with someone who had a conflict of interest, he did not violate the statute.

We have, however, noted that the purpose of the statute "was as much to prevent giving the appearance of conflict as to suppress all tendency to wrongdoing." *Selectmen of Avon* v. *Linder*, 352 Mass. 581, 583 (1967). The commission has stated that "[s]ection 23 (*b*) (3) is concerned with the appearance of a conflict of interest as viewed by the reasonable person," not whether preferential treatment was given. *Matter of Hebert*, 1996 State Ethics Comm'n 800, 810 (April 29, 1996). The commission has chosen to interpret this statute as a prophylactic measure, and the language of the statute accords with its interpretation. Therefore we uphold the determination that Scaccia violated the public officials' code of conduct statute.

Accordingly, we vacate so much of the Superior Court's decision that upheld a violation of the gratuity statute, and we affirm the remaining portions of the decision, addressing violations of the gift statute, the financial disclosure law, and the public officials' code of conduct statute. We therefore remand the case to the Superior Court for remand to the commission for a hearing regarding the civil penalty to be assessed against Scaccia. We deny Scaccia's request for attorney's fees under G. L. c. 268B, § 4 (*k*).

*So ordered.*