## COMMONWEALTH *vs.* EDWYN VAZQUEZ.

No. 05-P-956.

Hampden. April 12, 2007. - July 30, 2007.

Present: VUONO, SMITH, & MEADE, JJ.

*Conspiracy. Evidence,* Conspiracy. *Public Officer. Gratuity Statute.*

At a criminal trial, the evidence was sufficient to establish the Commonwealth's theory that the defendant, a correctional officer, had conspired with an inmate and the inmate's girlfriend to smuggle contraband into the jail, in violation of G. L. c. 274, § 7 [626-627], and that the defendant had received something of value (namely, the use of the inmate's motor vehicle) for or because of an official act or an act within the defendant's official responsibility (namely, the monitoring of inmates), in violation of G. L. c. 268A, § 3(*b*) [627-628].

At the trial of an indictment charging conspiracy, there was no error in the admission of recorded telephone conversations of the defendant's alleged coconspirators, where the statements were made during the course of and in furtherance of the conspiracy, and where there was sufficient nonhearsay evidence to establish an adequate probability that the coconspirators and the defendant were engaged in the criminal enterprise [628-629]; further, there was no error in the admission of a letter written by one coconspirator, where the letter was written before the end of the conspiracy and in an attempt to conceal evidence of the crime [629-630]; finally, the admission of certain other evidence, even if error, did not create a substantial risk of a miscarriage of justice where it was cumulative of other properly admitted evidence [630].

A Superior Court judge did not err in denying a criminal defendant's motions for a new trial and for postconviction discovery, brought on the ground of ineffective assistance of trial counsel. [630-631]

INDICTMENTS found and returned in the Superior Court Department on May 19, 2004.

The cases were tried before *Bertha D. Josephson,* J., and motions for new trial and for postconviction discovery, filed on December 8, 2005, were heard by her.

*Patricia Quintilian* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On March 7, 2005, a Superior Court jury convicted the defendant, Edwyn Vazquez, a correctional officer at the Hampden County house of correction in Ludlow, of conspiring with Luis Rodriguez, an inmate at the facility, and Rodriguez's girlfriend, Damaris Diaz, to deliver drugs or other contraband to Rodriguez, in violation of G. L. c. 274, § 7. The defendant was also convicted of being a public employee who accepted a gift, the use of a 2000 black Jaguar automobile, in violation of G. L. c. 268A, § 3(*b*). The jury returned a not guilty verdict on an indictment charging the defendant with delivering drugs or other contraband into the correctional facility.[1]

The defendant filed a timely appeal, which was stayed in order to allow the defendant to file a motion for a new trial. The defendant filed a motion for a new trial in which he claimed that his trial counsel was constitutionally ineffective. The motion was accompanied by a motion for postconviction discovery. Both motions were denied by the trial judge, and the defendant appealed. Both the direct appeal and the appeal from the denials of the motions for a new trial and postconviction discovery were consolidated in this court.

A. *Direct appeal.* In his direct appeal, the defendant claims that the judge committed error in (1) denying his motion for a required finding of not guilty; (2) admitting in evidence the statements of his coconspirators; and (3) admitting in evidence a statement made by Rodriguez after the conspiracy had ended.

We summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). At the time of the commission of the charged crimes, the defendant's duties as a correctional officer included monitoring two "pods," Davis three and Davis four. The pods were inmate living units each containing thirty-six cells. Rodriguez was an inmate living in Davis three. The defendant worked the day shift from 7:25 A.M. to 4:00 P.M.

On February 6, 2004, the superintendent of operations at the correctional facility was approached by an inmate who informed

---

[1]Prior to trial, the judge allowed the defendant's motion pursuant to Mass. R.Crim.P. 9(e), 378 Mass. 861 (1979), to have the conspiracy indictment tried with the substantive offenses.

him that a cellular telephone had been circulated among the inmates in Davis three within the last few days. Inmates were forbidden the use of cellular telephones.

As a result of that information, the correctional staff began monitoring telephone calls placed on inmate telephones located in Davis three.[2] In telephone calls made by Rodriguez, specific references were made to a cellular telephone. In addition, Rodriguez's telephone calls to Diaz on the inmate telephones included references to a motor vehicle, a Jaguar, and food items that were being delivered to the inmates. The conversations also made specific references to "Eddie" at different points.[3] The conversations included reference to Eddie wanting to borrow the Jaguar; Diaz asking Rodriguez what to do about Eddie's request; and Rodriguez, in turn, telling her that he did not know if he wanted Eddie to use the vehicle but finally agreeing to let Eddie use his vehicle.

Subsequently, on February 9, 2004, a search team, headed by one Lieutenant Ramos, searched Rodriguez's cell. The search revealed a cellular telephone, a cellular telephone charger with an extra battery, a lighter, and a Tupperware container. All of these items were contraband. During the search, the cellular telephone rang and a female voice, later identified as Diaz, asked for Rodriguez. The cellular telephone was owned by Diaz's mother. After the contraband was discovered, Rodriguez was moved to solitary confinement.

After the search of his cell, Rodriguez told John Kenney, the deputy chief of security, that he (Rodriguez) had lent the defendant his automobile, a 2000 black Jaguar, and that on January 18, 2004, it had become involved in an accident in Springfield. As a result of that conversation, the investigation focused on the defendant and his relationship with Rodriguez.

The investigators retrieved from the computer and listened to all telephone calls made by Rodriguez on the inmate telephone

---

[2]There were twelve to fifteen inmate telephones in each pod. The inmates could only make outgoing collect telephone calls; they could not receive incoming calls. The inmates were free to use the telephones at any time, but they were put on notice that all of their calls were recorded and could be subject to monitoring by correctional officials.

[3]There was testimony that there were three correctional officers named Eddie, Edwyn, or Edward working with inmates on the day shift.

system from January 16, 2004, to the time his cell was searched on February 9, 2004. Most of the telephone calls were to Diaz and included discussions about the delivery of food to Rodriguez and whether Rodriguez would allow Eddie to use his Jaguar. These telephone conversations are summarized below.

On Saturday, January 17, 2004, Rodriguez telephoned Diaz and told her that the defendant wanted to use his Jaguar. After considerable discussion, Rodriguez told Diaz to let the defendant use the vehicle. He also stated that the defendant brings in "food and all the other stuff."[4] During the telephone call, the defendant also spoke to Diaz on the inmate telephone that was inside Rodriguez's pod. He told her that he would call her when he got off duty. The defendant's cellular telephone records showed that he called Diaz four times between 6:30 P.M. and 9:00 P.M. and that she called him at 9:05 P.M. At nearly midnight on January 17, 2004, Rodriguez telephoned Diaz, who told Rodriguez that Eddie had taken the Jaguar and would bring it back on Monday.

On January 18, 2004, the Jaguar was involved in a traffic accident. The defendant was the operator of the Jaguar, and in his statement to the police, he stated that he had borrowed it from a friend. The automobile was registered to Rodriguez's younger brother, Joshua Rodriguez. His post office box address was the same as Diaz's.[5]

On February 4, 2004, Rodriguez asked Diaz if she had sent the cellular telephone. She answered affirmatively and also described the food she sent to Rodriguez. Rodriguez responded that Eddie had picked up the bag that Diaz had sent and "smelled whatever Diaz put in it." On the same date, Rodriguez told Diaz that a shakedown search had occurred that day and that guards had gone into his cell and had taken six Tupperware containers.

The defendant's cellular telephone records indicated that on

---

[4]During the conversation, Diaz told Rodriguez that Eddie had asked her what she was going to cook for them tomorrow, and when Diaz had told Eddie lasagna, Eddie had replied that that was not what they were expecting.

[5]Photographs of a black Jaguar were found in Rodriguez's cell during the February 9 search. One photograph depicted a tarp-covered Jaguar that was parked in the defendant's driveway.

February 7, 2004, a call was made from the cellular telephone that was found in Rodriguez's cell to the defendant's cellular telephone. The call was not answered, but on the next day, the defendant's cellular telephone received two calls from the cellular telephone found in Rodriguez's cell. One call lasted thirteen seconds; the other was not answered. On February 9, 2004, another search of Rodriguez's cell took place at which time the officers found, among other things, another Tupperware container.[6]

On March 1, 2004, correctional officials intercepted a letter written by Rodriguez to Diaz. The envelope also contained a second letter. The Diaz letter instructed Diaz to give the other letter to "you know who." That letter was addressed to "John Doe" and, among other things, ordered him to have the car repaired.

1. *Denial of motion for required finding of not guilty.* In reviewing a denial of a motion for a required finding of not guilty, our inquiry is whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact that the essential elements of the crime have been proven beyond a reasonable doubt. See *Commonwealth* v. *Coonan*, 428 Mass. 823, 828 (1999). "In satisfying that test, the Commonwealth may rely on reasonable inferences drawn from circumstantial evidence." *Commonwealth* v. *Degro*, 432 Mass. 319, 325 (2000).

a. *Sufficient evidence of the conspiracy.* It was the theory of the Commonwealth that the defendant entered into a conspiracy with Rodriguez and Diaz whereby the defendant agreed to deliver to Rodriguez certain contraband items while he was incarcerated, in exchange for Rodriguez and Diaz allowing the defendant to use Rodriguez's Jaguar.

"The elements of conspiracy are 'a combination of two or more persons, by some concerted action, to accomplish some

---

[6]The finding of Tupperware containers in Rodriguez's cell on February 4 and again on February 9 is significant because no contact between inmates and visitors, except attorneys, is allowed. Nothing can be passed from visitor to inmate because they are separated by a glass partition. A reasonable inference may be drawn that the defendant delivered food to Rodriguez in a Tupperware container sometime between the search on February 4 and the search on February 9.

criminal or unlawful purpose . . . . [T]he unlawful agreement constitutes the gist of the offence . . . .' " *Commonwealth* v. *Costa*, 55 Mass. App. Ct. 901, 901 (2002), quoting from *Commonwealth* v. *Benson*, 389 Mass. 473, 479, cert. denied, 464 U.S. 915 (1983).

The elements of the conspiracy were established by the contents of the recorded telephone calls,[7] the defendant's and Diaz's records of telephone and cellular telephone calls, the contraband discovered in Rodriguez's cell, and the subsequent use of the Jaguar by the defendant. Coupled with that evidence is the reasonable inference that the defendant joined with Rodriguez and Diaz to smuggle contraband into the jail in order to obtain the use of Rodriguez's vehicle, and continued to do so after the accident.

b. *Sufficient evidence of acceptance of a gift.* For a violation of G. L. c. 268A, § 3(*b*), it is enough that the defendant requested or received something of substantial value for or because of an official act or an act within his official responsibility. *Scaccia* v. *State Ethics Commn.*, 431 Mass. 351, 354 (2000). The Commonwealth must "prove a link between a thing of value conferred upon a public official and a specific 'official act' [or act within the official responsibility of the defendant] for or because of which it was given." *Id.* at 355, quoting from *United States* v. *Sun-Diamond Growers of Cal.*, 526 U.S. 398, 414 (1999).

Here, the evidence of the telephone and cellular telephone calls between the defendant, Diaz, and Rodriguez demonstrate that the defendant, a county employee, received something of substantial value — the use of Rodriguez's Jaguar.[8] Compare *Commonwealth* v. *Famigletti*, 4 Mass. App. Ct. 584, 587 (1976) (fifty dollars was substantial value in the context of § 3[*b*]).

The Commonwealth also showed a link between the use of

---

[7]See discussion, *infra*, regarding the admission of statements of coconspirators.

[8]The statements of the defendant's coconspirators are also admissible on the crime charged pursuant to G. L. c. 268A because the rule that allows the admission of coconspirator's statements "is not confined to cases where a conspiracy is charged, but it is applicable wherever a combination to effect a particular object is established." *Commonwealth* v. *Latour*, 12 Mass. App. Ct. 523, 528 (1981), quoting from *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972). See discussion, *infra*, regarding admission of statements of coconspirators.

the Jaguar and the specific official act or act within the defendant's responsibility for or because of which it was given. The defendant obtained the use of the vehicle because, as a correctional officer exercising his official responsibility of monitoring the inmates, he provided contraband, including a cellular telephone, to Rodriguez both before and after the defendant damaged the car. See *Scaccia*, 431 Mass. at 356 ("A gratuity in violation of the statute . . . can either be provided to an official as a reward for past action, to influence an official regarding a present action, or to induce an official to undertake a future action").

We hold that there was sufficient evidence to warrant sending both counts to the jury.

2. *Admission of statements of coconspirators.* Prior to jury impanelment, the defendant objected to the introduction in evidence of the recorded telephone conversations of his alleged coconspirators on the ground, among others, that there was insufficient independent evidence to prove the conspiracy. The judge asked the prosecutor to make a proffer of the independent evidence that he expected to introduce to prove the conspiracy. After the proffer, the judge ruled that the statements were admissible. The defendant claims that the judge committed error because the coconspirators' statements were not admissible on hearsay grounds.[9]

Out-of-court statements made by alleged coconspirators may be admitted against a criminal defendant if (a) the statements were made during the course of and in furtherance of a common criminal goal and (b) there is sufficient nonhearsay evidence to establish an adequate probability that the declarant and the defendant were engaged in the criminal enterprise. *Commonwealth* v. *Nascimento*, 421 Mass. 677, 680-681 (1996). *Commonwealth* v. *Rankins*, 429 Mass. 470, 474 (1999).

The Commonwealth introduced sufficient admissible evi-

---

[9]The defendant also challenges the admission of the coconspirators' evidence as being against the confrontation clause of the Sixth Amendment to the United States Constitution, relying on *Bruton* v. *United States*, 391 U.S. 123, 135-136 (1968). That reliance is misplaced because the *Bruton* rule only applies at a joint trial. See *Commonwealth* v. *Wilson*, 443 Mass. 122, 135 (2004); *Commonwealth* v. *Dwyer*, 448 Mass. 122, 131 (2006).

dence, exclusive of the recorded telephone calls, to prove that a conspiracy existed to deliver contraband to an inmate, Rodriguez, and to prove that the defendant accepted a gift of substantial value, the use of the Jaguar. Therefore, the statements of the defendant's coconspirators were admissible.

The evidence demonstrated that the defendant was a correctional officer assigned to monitor the pod in which Rodriguez was housed. On January 17, 2004, the defendant spoke to Diaz on the inmates' telephone while Rodriguez was talking to her. The defendant told Diaz that he would call her when he was off duty, and his cellular telephone records showed that he called her at least four times and that she called him back on that date.[10]

The defendant, while driving a 2000 black Jaguar, was involved in an accident on January 18, 2004. Because that Jaguar was registered to Rodriguez's younger brother and was similar to the 2000 black Jaguar shown in photographs found in Rodriguez's cell (see note 5, *supra*), it is reasonable to infer that the defendant was operating Rodriguez's vehicle at the time of the accident.

The search of Rodriguez's cell on February 9, 2004, resulted in the discovery of a cellular telephone owned by Diaz's mother. Other contraband was discovered, and because it would have been impossible for the items to have been smuggled to Rodriguez by a visitor (see note 6, *supra*), a reasonable inference could be drawn that a correctional employee delivered them to Rodriguez. In that regard, Rodriguez called the defendant's cellular telephone on February 7, 2004, and twice on February 8, 2004. The judge did not commit error in allowing in evidence the statements on the recorded telephone calls.

On appeal, the defendant also claims that the judge committed error by allowing in evidence the "John Doe" letter, dated March 1, 2004. The defendant argues that by that date, the conspiracy had ended and the contents of the letter were inadmissible hearsay. There was no objection to the admission of the letter. Therefore, if the letter was erroneously admitted,

---

[10]The defendant's statement to Diaz was not hearsay but was independently admissible. See *Commonwealth* v. *Allison*, 434 Mass. 670, 675 (2001) (defendant's statements were part of independent evidence that proved joint venture).

we must determine whether its admission created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Orben,* 53 Mass. App. Ct. 700, 703 (2002).

The rule that statements of coconspirators may be admitted against a defendant under certain circumstances "does not apply [to statements made] after the criminal enterprise has ended . . . [It] does apply where the [coconspirators] are acting to conceal the crime that formed the basis of the enterprise." *Commonwealth* v. *Anderson,* 445 Mass. 195, 211 (2005), quoting from *Commonwealth* v. *Angiulo,* 415 Mass. 502, 519 (1993).

There was no error in the admission of the letter because there was evidence that the conspiracy had not ended by March 1, 2004, as shown by the contents of the letter that indicated the defendant and Rodriguez were trying to conceal evidence of the crime.[11] The defendant's denial of participation in the crime, Rodriguez's deliberate omission of the defendant's name in the letter, and the contents of the letter demonstrate that the attempt by the defendant and Rodriguez to cover up their participation in the crime continued at the time that Rodriguez wrote the letter. In any event, even if the letter should not have been admitted, it did not create a substantial risk of a miscarriage of justice because it was entirely cumulative of other properly admitted evidence that showed that the defendant borrowed the car.

On appeal, the defendant raises an objection to Kenney's testimony that Rodriguez told Kenney after the search of Rodriguez's cell that the defendant had borrowed Rodriguez's Jaguar and that it was involved in an accident. There was no objection to the admission of this evidence. Therefore, our review is limited to whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Orben,* 53 Mass. App. Ct. at 703.

We hold that the admission of Rodriguez's statement to Kenney, even if it was error, did not create a substantial risk of a miscarriage of justice because the statement was cumulative of other properly admitted evidence.

B. *Denial of motions for a new trial and for postconviction*

---

[11]In the letter, Rodriguez stated, among other things, that he had not "talk[ed]" and was on the defendant's side "100%."

*discovery.* The defendant filed a motion for a new trial, which included a request for an evidentiary hearing. He claimed that trial counsel was ineffective because he failed to (1) conduct a proper investigation; (2) interview possible alternative suspects; (3) request materials concerning exculpatory evidence; (4) call witnesses and introduce available evidence to rebut the Commonwealth's evidence, and (5) introduce in evidence the defendant's personnel file. The defendant also filed a motion for postconviction discovery. The motion judge, who was the trial judge, denied the motions.

"A trial judge may allow a motion for new trial only 'if it appears that justice may not have been done.' Mass.R.Crim.P. 30(b), as amended, 435 Mass. 1501 (2001). 'A judge's decision to deny a motion for a new trial . . . will not be disturbed unless a review of the defendant's case shows that the decision, if not reversed, will result in "manifest injustice." ' *Commonwealth* v. *Watson,* 409 Mass. 110, 114 (1991), quoting from *Fogarty* v. *Commonwealth,* 406 Mass. 103, 110 (1989). 'Where, as here, the motion judge was also the trial judge, the decision of the motion judge is entitled to special deference.' *Commonwealth* v. *Barnette,* 45 Mass. App. Ct. 486, 493 (1998). '[W]here a claim of ineffective assistance of counsel is the basis for the defendant's motion for new trial, appellate courts accord substantial deference to the trial judge's favorable evaluation of a trial counsel's performance. *Commonwealth* v. *DeVincent,* 421 Mass. 64, 69 (1995).' *Ibid.*" *Commonwealth* v. *Delong,* 60 Mass. App. Ct. 122, 127 (2003).

The motion judge filed a comprehensive and scholarly memorandum of decision addressing the issues raised by the defendant. We have examined carefully the judge's reasons for the denial of the various motions. There is nothing that we can add to her reasons for her decisions, as shown by her memorandum.

Therefore, we hold that the motion judge did not commit error in denying the defendant's motions.

*Judgments affirmed.*

*Order denying motions for new trial and postconviction discovery affirmed.*