NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-593

COMMONWEALTH

vs.

JAMES BELLARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial, the defendant was convicted of violating G. L. c. 268, § 13B (b), by attempting to bribe an anticipated witness in his upcoming trial.  On appeal, the defendant contends that the judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to support his conviction.  We affirm.

Background.  We recite the facts in the light most favorable to the Commonwealth, reserving certain details for later discussion.  Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  This offense stemmed from an earlier one in which the defendant was charged with domestic assault and battery on his girlfriend and was detained pending trial.  Less than two weeks before the scheduled trial, the defendant called the

victim twice from the house of corrections.[1]  Based on the recorded statements in those calls, the Commonwealth charged the defendant with violating G. L. c. 268, § 13B, sometimes called the "witness intimidation" statute, although its scope is much broader.[2]

At trial on the § 13B charge, the Commonwealth pursued the theory that the defendant "conveyed a gift, offer or promise [of] anything of value" to the victim -- in other words, a bribery theory.[3]  The judge heard from the Commonwealth's witnesses, listened to the recordings in their entirety, and denied the defendant's motion for a required finding of not guilty,[4] ruling, among other things, that the defendant was "obviously attempting to convince the witness not to show up in [c]ourt, [or] not to accept [the] summonses" and that the defendant conveyed something of value to the victim, specifically an "offer of marriage."  This appeal followed.

---

[1] Because neither party appealed the judge's findings that the defendant and victim were the participants in the phone call, we accept that the voice of the inmate was that of the defendant and the other, female voice was that of the victim.

[2] At the time the calls were made, the defendant's trial was scheduled for August 2, 2016, about ten days later.  The trial was then rescheduled.

[3] The complaint charged all theories of witness intimidation.

[4] In his motion for a required finding, the defendant primarily argued that he did not convey a thing of value to the victim and that there was insufficient evidence that the female on the call was the victim.

Discussion.  1.  Standard of Review.  We review this claim, considering the evidence introduced at trial in the light most favorable to the Commonwealth, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Latimore, 378 Mass. at 677-678, bearing in mind that guilt may be established by circumstantial evidence and that inferences drawn from such evidence "need only be reasonable and possible and need not be necessary or inescapable" (citation omitted).  Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007).  "[F]indings drawn partly or wholly from testimonial evidence are accorded deference and not set aside unless clearly erroneous," Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018), but where the judge's factual findings are "predicated not on the assessment of witness credibility but rather on documentary materials," Commonwealth v. Pugh, 462 Mass. 482, 495 (2012), such as an audio recording, we review the evidence de novo.  See Tremblay, supra at 656.

A violation of G. L. c. 268, § 13B (b) (ii), requires proof that the defendant (1) willfully; (2) conveyed a gift, offer, or promise of anything of value; (3) to a witness or potential witness in a criminal proceeding of any type; (4) with the intent to impede or interfere with a criminal investigation or

3

proceeding.[5]  See G. L. c. 268, § 13B.  As did the parties, we direct our analysis at the second and fourth elements, i.e., whether the defendant promised anything "of value" and specifically intended his words to influence the victim not to testify at his upcoming trial.  We are satisfied that the evidence was sufficient to support the defendant's conviction.

2.  Gift, offer or promise of anything of value.  The recordings and testimony support that the defendant conveyed an offer or promise of a thing of value to the victim.  Because the term "value" is not defined in § 13B, we look at its "usual and accepted meanings, as long as [those] meanings are consistent with the statutory purpose" (citation omitted).  Commonwealth v. Paquette, 475 Mass. 793, 800 (2016).  Dictionaries define "value" as "[t]he significance, desirability, or utility of something," Black's Law Dictionary 1864 (11th ed. 2019), or the "[w]orth in usefulness or importance to the possessor; utility or merit."  The American Heritage Dictionary of the English Language (5th ed 2022), https://www.ahdictionary.com/word/search.html?q=value.  Something is "of value" for purposes of § 13B if the witness would perceive it as so important or significant as to influence

---

[5] Massachusetts courts have construed § 13B (b) (ii), as bribery. See, e.g., Commonwealth v. Hamilton, 459 Mass. 422, 434 (2011) ("§ 13B applies to one who threatens, bribes, misleads, intimidates, or harasses").

4

their participation in the proceeding.  See Commonwealth v. Hayes, 311 Mass. 21, 27 (1942) (key consideration in bribery case was whether offer was valuable to person seeking or obtaining it); Commonwealth v. Ruano, 87 Mass. App. Ct. 98, 99, 101 (2015) (sufficient evidence that defendant police officer conveyed offer or promise of value by telling witness he "could make 200 plus friends[,] . . . have the key to the city[,] . . . [and] could get out of trouble" if he recanted).

The recordings reflect the victim's frustration with the police officers who kept "coming to the house," "banging on" the door, and "threat[ening]" her to go to court.  She voiced concerns about "los[ing]" her children because of a "DSS case" that had been initiated; complained about dealing with it "by [her]self"; and explicitly told the defendant that she wanted "it to stop," "to all go away," and for "DSS to leave [her] alone."  Viewed in the context of the frequent contact by law enforcement officers and other state actors, the victim's statements permit an inference that she valued an end to the criminal proceedings and a return to normalcy.  See Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007) (factfinder "may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances"); Commonwealth v. Vazquez, 69 Mass. App. Ct. 622, 633 (2007) (where corrections officer expressed desire to borrow inmate's

5

Jaguar vehicle, he solicited something "of substantial value" for purposes of G. L. c. 268A, § 3 (b), by seeking temporary use of vehicle in exchange for delivering contraband to inmate).

The evidence further permits an inference that the defendant offered or promised the victim an end to the proceedings in exchange for her noncooperation with the authorities. The defendant assured her that "it" would all stop and "go away" if she "stop[ped] answering them, stop[ped] responding, and stop[ped] opening the door" for the authorities. The defendant repeatedly pressured the victim to "stop" opening the door and to "listen to [him]"; at one point, he purported to describe his lawyer's advice that, if the victim did not testify, the defendant did not need to worry, implying that his promise was backed by professional judgment. See Weida v. MacDougall, 300 Mass. 521, 524 (1938) (where defendant asked plaintiff to come look at business opportunity because of plaintiff's knowledge of the type of business, plaintiff's advice was "of value" to defendant). Throughout the conversations, the defendant played on the victim's insecurities[6] and appealed to her emotions by, among other things, assuring her that they were "still getting married," and telling her that

---

[6] For example, knowing that the victim feared losing her children if she did not cooperate, the defendant assured her that the authorities "[didn't] know shit about [him] or [her]," and were just "trying to play hardball" by "making shit up."

6

he "care[d] about [them] and [their] family."[7]  See Commonwealth v. Nordstrom, 100 Mass. App. Ct. 493, 502 (2021) (defendant's pressuring of victim and appeals to sympathy rather than fact were evidence of intimidation).  In this context, the judge reasonably could have inferred the defendant was explicitly offering the victim something of value by telling her that she "[wouldn't] be going through this shit if [he] was out there with [her]."

3.  Specific intent to influence witness.  "[A] statutory violation is not established unless there is also proof of a defendant's specific intent to 'impede, obstruct, delay, harm, punish, or otherwise interfere thereby' with a criminal investigation."  Commonwealth v. Morse, 468 Mass. 360, 371 (2014), quoting G. L. c. 268, § 13B (1) (c) (v); Scaccia v. State Ethics Comm'n, 431 Mass. 351, 356 (2000) (bribery requires proof of "corrupt intent" to enter unlawful quid pro quo).  Here, the evidence supports that the defendant knew of the victim's vulnerability; advised her to abandon the prosecution; repeatedly referred to his upcoming trial date;[8] relayed his lawyer's purported advice not to talk to the authorities, and

_____

[7] We need not rely on the purported "offer of marriage" to affirm the defendant's conviction.

[8] At one point, the defendant told the victim not to "answer the door or nothing for nobody" until then because "if [she's] not there, they can't do too much."

7

appealed to the victim's emotions.  Viewing the evidence in the light most favorable to the Commonwealth, the judge reasonably could have found that the defendant's purpose was to influence the victim not to participate in the trial.  See Commonwealth v. Robinson, 444 Mass. 102, 111 (2005) (intent to influence may be inferred from place, time, and circumstances of conduct); Scaccia, supra at 357.  We are satisfied that, in the context of his upcoming trial for domestic abuse, the defendant's intent to interfere with the proceeding was inferable from his statements to the victim.  Commonwealth v. Degnan, 91 Mass. App. Ct. 266, 271-272 (2017) (intent to solicit donation in exchange for maintaining city contract inferable from words and actions).

Judgment affirmed.

By the Court (Wolohojian, Henry & Hershfang, JJ.[9]),

Joseph F. Stanton

Clerk

Entered:  April 12, 2023.

---

[9] The panelists are listed in order of seniority.