NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1020

COMMONWEALTH

vs.

KEITH D. CORREIA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of larceny of a motor vehicle, negligent operation of a motor vehicle, and leaving the scene of property damage. On appeal, the defendant maintains that (1) identification testimony from eyewitnesses violated Commonwealth v. Crayton, 470 Mass. 228, 237, 242-243 (2014); (2) his trial counsel was ineffective; and (3) the evidence against him was insufficient. We affirm.

Background. The jury could have found that, on the evening of February 19, 2019, a couple leaving a restaurant saw the defendant checking the door handles of cars parked on the street, apparently to see if they were unlocked. After getting into their own car, the couple drove to a nearby parking lot, where they saw what appeared to be the same person "rummaging

through a car."  The wife called the police to report what they saw, and the couple then saw the defendant move to a different car, a gray Nissan Pathfinder.  The defendant got into the Pathfinder and drove it out of the lot.  The couple started to follow behind in their own car.  They saw the Pathfinder almost hit another vehicle, accelerate through an intersection, and hit two other vehicles along the street, which caused one of the Pathfinder's tires to pop and the rim of the wheel to spark.  There was a trail of "either oil or coolant" which the couple followed, eventually finding the Pathfinder "smashed" into another vehicle, with the same man they witnessed on the street and in the parking lot earlier (the defendant) walking away from the accident.  Both members of the couple testified that they recognized the man by his jacket and hat, though the wife testified that the two had disagreed on the color of the man's jacket.  The wife had been on the phone with the police while the couple was following the Pathfinder.  When police arrived at the scene, the husband directed the police to the defendant, who was then walking away from the car, and he was arrested.

The defendant filed a motion in limine to prevent in-court identifications at trial.  The judge took no action on the motion, reserving a ruling until in-court identifications occurred.  The couple had differing initial accounts of the defendant's appearance -- they disagreed about the color of his

2

jacket, and while the husband thought the defendant was white, the wife thought he had dark skin.

During the husband's testimony, he was asked about his ability to recognize the person he had seen and said that he had recognized the defendant "as soon as he walked through the courtroom doors this morning." The defendant objected to the statement as impermissibly suggestive but did not move to strike the identification or ask for a curative jury instruction. The judge instructed the Commonwealth to lay a foundation before prompting an in-court identification of the defendant but did not sustain the objection or (sua sponte) strike the statement. The husband then testified that he did not get a good look at the person's face, and the Commonwealth did not pursue the issue.

The wife also testified that she had not gotten a good look at the driver's facial features and that she had recognized him by his clothing, but she was nonetheless confident in her ability to identify the driver. The judge overruled the defendant's objection to the identification. The wife then identified the defendant.

The arresting officer testified and identified the defendant at trial as well. That officer had also taken some items from the defendant's person after detaining him, including a Nissan car key with a broken loop. Over the defendant's

3

objections, photos of the key and booking photos were entered into evidence.

Discussion. 1. In-court identifications. The defendant maintains that both the husband's and wife's in-court identifications were Crayton errors. Under Crayton, 470 Mass. at 237, 242-243, if there was no prior out-of-court identification, an in-court identification is only allowed if there is a "good reason." "Good reasons" include "where the eyewitness was familiar with the defendant before the commission of the crime," and "where the witness is an arresting officer who was also an eyewitness to the commission of the crime, and the identification merely confirms that the defendant is the person who was arrested for the charged crime." Id. at 242. "In both of these circumstances, the in-court [identification] is understood by the jury as confirmation that the defendant sitting in the court room is the person whose conduct is at issue rather than as identification evidence." Id.

The Commonwealth bears the burden of showing good reason for the in-court identification. See Crayton, 470 Mass. at 243. Here, with respect to the identifications by the couple, the Commonwealth asserted that the couple had directed the police to the scene. There had been no out-of-court identification procedure like a "showup" or a photo array. The couple was not previously familiar with the defendant. See id. at 242.

4

Because there was no good reason for the judge to allow in-court identifications from the couple, the trial judge erred by denying the defendant's motion in limine to prevent such identifications, and by overruling the defendant's objections to the wife's in-court identification. However, these errors did not prejudice the defendant. See Commonwealth v. Ortiz, 487 Mass. 602, 610-611 (2021). Given the strength of the other evidence presented to the jury, including an arresting officer's in-court identification of the defendant,[1] the errors "did not influence the jury, or had but very slight effect." Id. at 610, quoting Commonwealth v. Brown, 456 Mass. 708, 725 (2010), S.C., 466 Mass. 1007 (2013).

The husband's in-court identification stands on slightly different footing from the wife's; it was not responsive to the Commonwealth's questioning but was instead spontaneous. The defendant objected, which resulted in the judge's instructing the Commonwealth to lay the foundation for an identification. After failing to do so, the Commonwealth did not pursue an identification from the husband. The defendant did not move to strike the husband's unprompted statement or request a corrective jury instruction. We cannot say that the trial judge

---

[1] While the defendant also challenges the arresting officer's identification, that identification was permissible under Crayton, 470 Mass. at 242.

5

abused his discretion by not taking up those tasks sua sponte. Further, as discussed above, even if the judge had erred, it would not have prejudiced the defendant.[2]  See Ortiz, 487 Mass. at 610-611.

2.  Ineffective assistance.  The defendant claims, for the first time on appeal, that his trial counsel provided ineffective assistance by not moving to suppress the car key with the broken loop.[3]  Absent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal.  Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006), and cases cited therein.   Because the factual basis for the defendant's claim does not "appear[] indisputably on the trial record," Commonwealth v. Adamides, 37 Mass. App.

_____

[2] The judge also did not err by admitting photographs of the defendant from after his arrest, as it was reasonable for him to conclude that any risk of unfair prejudice did not substantially outweigh their probative value.  See Crayton, 470 Mass. at 249 n.27, citing Mass. G. Evid. § 403 (2014).

[3] The defendant also appears to raise, for the first time, arguments related to whether there was probable cause to stop and arrest him, and appears to suggest that an arrest warrant was required, that the seizure of the key with the broken loop was unlawful, and that the stop was racially discriminatory. Because these issues were not raised below, we ask whether the record is "adequate to permit review on the merits" and, if so, review to determine whether there was an error and, if any, whether it created a substantial risk of a miscarriage of justice.  Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019).  The record, including the trial transcript, is inadequate to permit review of the defendant's claims under the United States Constitution and the Massachusetts Declaration of Rights.  See id. at 797-798.

6

Ct. 339, 344 (1994), it does not fall "within that narrow category of claims that an appellate court can resolve on the trial record," Zinser, supra at 811.  Even if this claim were properly before us, it would fail, because counsel's conduct did not fall "measurably below that which might be expected from an ordinary fallible lawyer."  See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  Further, "to prevail on an ineffective assistance of counsel claim on the ground of failing to file a motion to suppress, the defendant has to demonstrate a likelihood that the motion to suppress would have been successful."  Commonwealth v. Comita, 441 Mass. 86, 91 (2004).  The defendant has not done so here.  See note 3, supra.

3.  Sufficiency of the evidence.  The defendant maintains that the trial judge should have granted his motions for required findings of not guilty because the evidence against him was insufficient.  "In reviewing a denial of a motion for a required finding of not guilty, our inquiry is whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact that the essential elements of the crime have been proven beyond a reasonable doubt."  Commonwealth v. Vazquez, 69 Mass. App. Ct. 622, 626 (2007).  "[W]e keep in mind that the evidence relied on to establish a defendant's guilt may be entirely circumstantial, . . . and that the inferences a jury may draw from the evidence

'need only be reasonable and possible and need not be necessary or inescapable.'" Commonwealth v. Linton, 456 Mass. 534, 544 (2010), S.C., 483 Mass. 227 (2019), quoting Commonwealth v. Lao, 443 Mass. 770, 779 (2005). "[F]indings drawn partly or wholly from testimonial evidence are accorded deference and not set aside unless clearly erroneous," Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018), but where factual findings are "predicated not on the assessment of witness credibility but rather, on documentary materials," Commonwealth v. Pugh, 462 Mass. 482, 495 (2012), we review the evidence de novo. See Tremblay, supra at 656.

Here, the evidence was sufficient to prove that the defendant stole and negligently operated the Pathfinder and left the scene of the accident. Testifying witnesses, including an arresting officer, placed the defendant at the scene of the car theft and the accident, saw the Pathfinder dangerously and illegally cross multiple intersections, and witnessed it crashing into parked vehicles. When the defendant was arrested a block away from the accident, a Nissan car key was in his

pocket. From the evidence, a jury could reasonably have concluded that the defendant committed the charged crimes.[4]

Judgments affirmed.

By the Court (Hand,
  Hershfang & Brennan, JJ.[5]),

Assistant Clerk

Entered: April 9, 2024.

---

[4] To the extent we have not specifically addressed any of the defendant's arguments, we have considered them and do not find them worthy of discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[5] The panelists are listed in order of seniority.