## COMMONWEALTH *vs.* MELISSA L. SUEIRAS.

No. 06-P-1645.

Berkshire. March 13, 2008. - August 26, 2008.

Present: CYPHER, SMITH, & MILLS, JJ.

*Alcoholic Liquors. Practice, Criminal,* Motion to suppress, Instructions to jury, Presumption of innocence, New trial. *Search and Seizure,* Exigent circumstances, Probable cause. *Probable Cause. Intent. Witness,* Self-incrimination. *Waiver.*

A District Court judge properly denied the criminal defendant's motion to suppress evidence seized from her home, where a police officer's warrant-less entry and search of the premises did not violate her rights under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights, because there was probable cause to believe that a crime was being committed there, and any delay caused by securing a warrant would have likely resulted in the imminent destruction or loss of evidence. [442-443]

At the trial of criminal complaints charging the defendant with knowingly or intentionally providing alcohol to persons under the age of twenty-one in violation of G. L. c. 138, § 34, the jury were properly instructed on both the presumption of innocence and the intent required for the charged offenses. [443-444]

In the circumstances of a criminal trial, no substantial risk of a miscarriage of justice arose from the judge's appointment of attorneys for defense witnesses and then allowing them to assert their right under the Fifth Amendment to the United States Constitution against self-incrimination in a "blanket" fashion, rather than on a question-by-question basis, where the judge conducted a voir dire of each witness to determine whether he or she could validly assert his or her right. [444-446]

Although the judge at a criminal trial erred in ruling that certain Commonwealth witnesses had waived their rights under the Fifth Amendment to the United States Constitution against self-incrimination by testifying at their own show cause hearings, the judge was not required to appoint counsel for those witnesses, as there was no longer any real threat of future self-incrimination if they testified in the defendant's case, in that they had already been charged with and sentenced for crimes related to the incident in question. [446-447]

A District Court judge properly allowed a juvenile witness to testify on behalf of the Commonwealth without being appointed counsel and without being instructed of his right under the Fifth Amendment to the United States Constitution against self-incrimination, where there was no real risk that his answers to questions would tend to indicate his involvement in illegal activity. [447-448]

A District Court judge properly denied the criminal defendant's motion for a new trial without an evidentiary hearing, where the defendant's memorandum and accompanying affidavits failed to raise a substantial issue necessitating such proceedings, in light of overwhelming contradictory evidence that was brought forth at trial. [448-449]

COMPLAINT received and sworn to in the North Adams Division of the District Court Department on December 17, 2001.

COMPLAINTS received and sworn to in the Berkshire County Division of the Juvenile Court Department on September 30, 2002.

After the cases were consolidated in the Berkshire Juvenile Court, a pretrial motion to suppress evidence was heard by *Paul E. Perachi,* J.; the cases were tried before him, and a motion for a new trial, filed on April 9, 2007, was heard by him.

*Patricia Quintilian* for the defendant.

*Karen L. Carlo,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Melissa L. Sueiras, was charged in District Court with a ten-count complaint alleging that she knowingly or intentionally provided alcohol to a person under the age of twenty-one in violation of G. L. c. 138, § 34. The defendant was also charged with criminal complaints in Juvenile Court alleging that she contributed to the delinquency of a minor in violation of G. L. c. 119, § 63. After an interdepartmental request, the complaints were consolidated and heard in Juvenile Court. A jury returned verdicts of guilty on all counts. The defendant appeals from the denial of her motion to suppress. She also alleges that the judge erred in instructing the jury on the presumption of innocence and state of mind, that the judge unfairly appointed counsel to the defense witnesses but not the prosecution witnesses, and that her motion for a new trial should not have been denied. We affirm.

*Factual background.* The judge found the following facts.[1] Sometime in October and November, 2001, Juvenile Court pro-

---

[1] We include uncontroverted and uncontradicted facts to provide background information. We reserve the discussion of facts from the trial to the appropriate issues. The same judge ruled on the motion to suppress, presided over the trial, and ruled on the motion for new trial.

bation Officer Colleen Murphy began receiving telephone calls from both parents and students at Hoosac Valley High School telling her that the defendant, who was a teacher at the school, was having parties, with alcohol, for juveniles at her house.

On November 9, 2001, Murphy stationed herself outside the defendant's house and observed several groups of juveniles enter the defendant's home. She did not see the juveniles carry anything into the defendant's house.

Later in the evening, Murphy spotted a group of juveniles leaving the defendant's residence carrying six-packs of Smirnoff Ice, an alcoholic beverage. She stopped them as they were leaving the house, and after confirming that they were all under the age of twenty-one, called the police. Murphy directed the juveniles to sit in their car and she took away the keys.

Adams police Officer Keith Erdeski arrived in full uniform at approximately 7:30 P.M. Murphy told Officer Erdeski that she had seen juveniles leave the defendant's house in possession of alcohol. The juveniles told Officer Erdeski that they went to the defendant's house because they heard there was going to be a party, and that they had obtained the alcohol from the defendant. Officer Erdeski could tell, based on his conversations with the juveniles and from an odor of alcohol coming from the juveniles, that they had been drinking.

The defendant's residence was a duplex-style apartment. The front doors had windows on them. Through the defendant's windows, Officer Erdeski saw some Budweiser beer cans and Smirnoff Ice bottles on a cabinet shelf near some juveniles. Officer Erdeski spoke with the defendant at the front door and told her that it was his opinion that he had "enough probable cause [to go into her home] because of the minors in possession of alcoholic beverages and from what [he and Murphy had] observed." The defendant told Officer Erdeski that she had been upstairs in her apartment and that she was not sure what was going on downstairs.

Officer Erdeski asked the defendant if he could enter the premises and have a look around. She appeared hesitant to let him in, but did not tell him he could not enter and did not try to prevent him from entering her house. Officer Erdeski and Murphy entered the first floor of the defendant's residence, where they found juveniles in possession of alcohol. They also saw a

group of juveniles in a small side room, attempting to hide from them.

Officer Erdeski believed that evidence could have been destroyed if he did not enter the premises immediately. He testified that all of the empty containers as well as the alcoholic beverages could have been taken out the back door or hidden from him. He was also worried that the juveniles would leave through the back door and then leave the area altogether. According to Officer Erdeski, posting an officer at the door while a warrant was sought could have stopped people from leaving, but could not have prevented evidence from being destroyed.

*Discussion.* 1. *The defendant's motion to suppress evidence.* Before trial, the defendant moved to suppress the evidence seized from the defendant's house. The judge denied the motion after an evidentiary hearing, finding that "[i]mmediate entry [into the defendant's apartment] was necessitated in that a delay would likely have resulted in the juveniles['] movement to other parts of the house or departure from same thereby resulting in per se destruction of evidence in that the elements of the crime being investigated require minors to be in the vicinity of the alcoholic beverages."

The defendant argues that the judge erred by denying her motion to suppress because there were no exigent circumstances that made it impracticable for the police to obtain a warrant. The defendant also argues that the judge erroneously "intimated" that she had consented to the search of her home. The Commonwealth contends that the judge properly denied the defendant's motion as the exigency exception to the warrant requirement applied because there was probable cause and the threat of imminent loss of evidence made obtaining a warrant impracticable.

In reviewing a decision on a motion to suppress, we accept the judge's findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law. See generally *Commonwealth* v. *Isaiah I.*, 450 Mass. 818, 821 (2008).

"The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy." *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). Warrantless entries into a home "are per se unreasonable unless

they fall within one of the few narrowly drawn exceptions to the . . . warrant requirements [of the Fourth Amendment to the United States Constitution]." *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 233 (1983), citing *Katz* v. *United States*, 389 U.S. 347, 357 (1967).

It is well-settled, however, that when certain exigent circumstances make obtaining a warrant impracticable, a search or seizure may be justified where there is probable cause. *Commonwealth* v. *Washington*, 449 Mass. 476, 480 (2007). "One such exigent circumstance is the threat of imminent loss of evidence." *Ibid.* See *Commonwealth* v. *DeJesus*, 439 Mass. 616, 620 (2003); *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 697-700 (1984).

We conclude that the warrantless entry and search of the defendant's home did not violate her rights under the Fourth Amendment to the United States Constitution or art. 14 of the Declaration of Rights of the Massachusetts Constitution because the probable cause and exigent circumstances exception was satisfied. See *Commonwealth* v. *Forde*, 367 Mass. at 807. There was probable cause to believe that a crime was being committed inside the defendant's residence. Immediate entry into the defendant's residence was necessitated in that any delay caused by securing a warrant would have likely resulted in the imminent destruction or loss of evidence. See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. at 697-700.[2]

2. *The judge's instructions to the jury.* The defendant argues that the judge committed reversible error when he instructed the jury on the presumption of innocence and that he failed to instruct on the requisite state of mind for the charge of furnishing a minor with alcohol. Specifically, the defendant claims that the judge erred by omitting the next to the last sentence of Model Jury Instructions for Use in the District Court § 2.04 (1988), which states, "[i]t requires you to find the defendant not guilty unless her guilt has been proved beyond a reasonable doubt," and by failing to instruct the jury on specific intent.

Upon review of the jury instructions, we conclude that the

---

[2]Where we have decided that probable cause and exigent circumstances exist, we need not resolve the issue whether the defendant consented to Officer Erdeski's entry into her home.

jury were properly instructed on both the presumption of innocence and the intent required for the charged offense. The judge adequately and unambiguously instructed the jury on the presumption of innocence. Accordingly, the defendant's argument is without merit.

Regarding the alleged deficiency in the instruction on specific intent, the judge instructed the jury as follows:

> "In order to prove the defendant guilty of delivering or furnishing alcoholic beverages to a person under 21 years of age the Commonwealth must prove that the defendant delivered an alcoholic beverage or alcohol to any person under 21 years of age either for his own use or for the use of any other person. Or that the defendant did furnish alcohol or alcoholic beverage to any person under 21 years of age. For the purpose of this statute, the term furnish mean[s] knowingly or intentionally supply, give or provide to or allow a person under 21 years of age to possess alcoholic beverages on the premises or property owned or controlled by the person charged."

Thus, the jury were properly instructed as to the degree of intent required by the statute. While the judge did not use the exact words defining specific intent as given in *Commonwealth v. Militello*, 66 Mass. App. Ct. 325, 341 (2006), quoting from *Commonwealth v. Nickerson*, 388 Mass. 246, 253-254 (1983) ("a conscious act with the determination of the mind to do an act"), the jury were made aware that in order to convict the defendant of furnishing alcohol to a minor, they had to find that she knowingly or intentionally did so. See *Commonwealth v. Chasson*, 383 Mass. 183, 188 (1981) ("judge is not bound to instruct in the exact language of particular requests for instructions"); *Commonwealth v. Sinnott*, 399 Mass. 863, 878 (1987) ("judges are not required to deliver their instruction in any particular form of words, so long as all necessary instructions are given in adequate words").

3. *The appointment of counsel to potential witnesses.* a. *Defense witnesses.* The defendant asserts that the judge erred in appointing attorneys for defense witnesses and then allowing them to assert their rights under the Fifth Amendment to the United

States Constitution against self-incrimination in a "blanket" fashion, rather than on a question-by-question basis, and that "[i]t was error for the trial judge to allow these witnesses to invoke a blanket privilege without any inquiry regarding the legal efficacy of the invocation." The defendant did not object to this procedure at trial.

"Under art. 12 [of the Massachusetts Declaration of Rights], we apply broad standards, consistent with Federal standards, in determining whether a claim of privilege [against self-incrimination] is justified." *Commonwealth* v. *Martin*, 423 Mass. 496, 502 (1996). "The standards are highly protective of the constitutionally guaranteed right against self-incrimination." *Ibid.* "A witness may refuse to testify unless it is 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." *Ibid.*, quoting from *Commonwealth* v. *Funches*, 379 Mass. 283, 289 (1979). "A witness also is not entitled to make a blanket assertion of the privilege. The privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, or area which the prosecution might wish to explore, must be considered." *Ibid.*

At trial, the defense planned to call five juvenile witnesses (defense witnesses). On the first day of trial, the judge appointed attorneys for each of the four defense witnesses who were present[3] for the purpose of advising them of their Fifth Amendment right against self-incrimination. After consultation with their attorneys, the four defense witnesses asserted their Fifth Amendment right not to testify and refused to testify on behalf of the defense.

The defense witnesses who invoked their Fifth Amendment privilege individually took the witness stand and were sworn under oath, after which the prosecutor summarized the facts upon which they could be subject to prosecution. The judge then conducted a voir dire of each witness to determine whether he or she could validly assert his or her right against self-incrimination. It was determined that each defense witness did

---

[3]One of the planned defense witnesses was not present.

not wish to testify because the testimony could indicate that he or she possessed alcohol while being under twenty-one years of age.

These individuals had not yet been charged with a crime in connection with the events of November 9, 2001. All four of the defense witnesses faced some threat of being charged with being a minor in possession of alcohol, based on the evidence that was to be presented at trial regarding the events of November 9, 2001. It appears that most, if not all, of the questions that would be asked of them concerning the night of November 9, 2001, would expose them to self-incrimination. See *Commonwealth* v. *Funches*, 379 Mass. at 289; *Commonwealth* v. *Martin*, 423 Mass. at 502. Defense counsel was given the chance to object or to question the witnesses but he did not do so. The defendant now claims the witnesses were improperly allowed to assert their Fifth Amendment privilege in a "blanket" fashion. The judge's failure to have each witness assert his or her Fifth Amendment privilege on a question-by-question basis did not, in these circumstances, create a substantial risk of a miscarriage of justice.

b. *The Commonwealth's witnesses.* The defendant argues that the judge erred by not appointing counsel for the Commonwealth's witnesses who testified at trial, and by ruling that those witnesses had waived their right against self-incrimination by testifying at their own show cause hearings. The Commonwealth concedes, and we agree,[4] that the judge erred by ruling that four other juveniles who testified for the Commonwealth (Commonwealth witnesses) had waived their rights against self-incrimination by testifying at their show cause hearings. These show cause hearings were separate proceedings not involving the defendant; therefore, the witnesses' rights against self-incrimination in the defendant's trial were not properly waived. See *Commonwealth* v. *Borans*, 388 Mass. 453, 457-459 (1983) (waiver by testimony rule does not apply in later trials that involve different defendants). Despite this error, the Common-

---

[4]Notwithstanding a concession of error, we have an independent obligation to review the matter and satisfy ourselves that an error occurred. *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 686 n.6 (1992), cert. denied, 510 U.S. 975 (1993).

wealth argues that the judge did not err by failing to appoint counsel to those witnesses because they had already been charged as minors in possession of alcohol in connection with the incident at the defendant's home on November 9, 2001, and it did not appear likely that their testimony would result in additional charges.

In this case, the prosecutor informed the judge that the four Commonwealth witnesses had been charged with being minors in possession of alcohol as a result of the incident for which the defendant was on trial, and that their cases had been resolved. Officer Erdeski testified at trial that he charged all four of the Commonwealth witnesses with being minors in possession of alcohol. The juveniles later testified to the punishment that they received as a result of the incident on November 9, 2001.

Although there was no waiver of Fifth Amendment rights as to the Commonwealth witnesses, the judge was not required to appoint counsel for them. All four of these witnesses had already been charged with and sentenced for crimes relating to their conduct on November 9, 2001, at the defendant's house. There was no longer any real threat of future self-incrimination if these four witnesses testified in the defendant's case. *Commonwealth* v. *Crawford,* 12 Mass. App. Ct. 776, 779 n.4 (1981) (possibility of prosecution "more theoretical than real").

There was one juvenile witness who testified on behalf of the Commonwealth, Julian.[5] Julian was not appointed an attorney, nor was he instructed as to his Fifth Amendment right against self-incrimination. Before trial, the prosecutor informed the court that Julian was on the prosecution's witness list, but he was never charged with possessing alcohol based on the facts of the case. The prosecutor stated, "He was not charged. He had no alcohol in his system. He was not in possession of any alcohol." There was, therefore, no need to appoint an attorney for him or to instruct him of his Fifth Amendment right. See *Commonwealth* v. *Martin,* 423 Mass. at 502, quoting from *In re Morganroth,* 718 F.2d 161, 167 (6th Cir. 1983) ("A witness must show a real risk that his answers to questions will tend to indicate his involvement in illegal activity, 'and not a mere imaginary, remote or speculative possibility of prosecution' "). Indeed, at trial, Julian

---

[5] A pseudonym.

testified that he had not been drinking that night. We conclude that the judge properly allowed Julian to testify without being appointed counsel and without being instructed as to his Fifth Amendment right against self-incrimination.[6]

4. *The denial of the defendant's motion for new trial.* The defendant argues that the judge erred by not granting her motion for a new trial. The basis for this argument, as noted in the discussion above, is that many of the defendant's witnesses did not testify at trial as a result of having asserted their Fifth Amendment privilege. The Commonwealth argues that the defendant has not suffered prejudice, and that the defendant has failed to raise a substantial issue necessitating an evidentiary hearing. The defendant submitted memoranda and affidavits in support of her motion for a new trial.

A judge's decision to deny a motion for a new trial, and thus to conclude that justice was done at trial, "will not be disturbed unless a review of the defendant's case shows that the decision, if not reversed, will result in 'manifest injustice.' " *Commonwealth* v. *Vazquez*, 69 Mass. App. Ct. 622, 631 (2007), quoting from *Commonwealth* v. *Delong*, 60 Mass. App. Ct. 122, 127 (2003). "[T]he decision whether to decide the motion on the basis of affidavits or to hear oral testimony, is left largely to the sound discretion of the judge." *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). In exercising his discretion, the judge must decide whether a substantial issue necessitating an evidentiary hearing has been raised. See *Commonwealth* v. *Grace*, 397 Mass. 303, 313 (1986). In doing so, the judge looks not only to the seriousness of the claims presented, but also to the adequacy of the defendant's factual showing on those claims. *Commonwealth* v. *Stewart*, *supra* at 257-258.

We conclude that the judge correctly determined that the defendant's memoranda and accompanying affidavits in support of her motion for new trial failed to raise a substantial issue necessitating an evidentiary hearing. The affidavits, written five and one-half years after the incident, were appropriately weighed

---

[6]Neither party has raised the question whether the defendant had standing to raise the Fifth Amendment waiver issue. Under our analysis, we need not address this issue, nor do we conclude that the defendant had standing in this case.

by the judge against the overwhelming contradictory evidence that was brought forth at trial.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*