NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-328

COMMONWEALTH

vs.

ANTHONY ROY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Anthony Roy, appeals from a District Court judge's order denying his motion to suppress evidence.  On appeal he argues that the judge erred in denying his motion because (1) a police officer entered the defendant's home without obtaining voluntary consent and (2) there was no evidence that the contraband seized by the officers was in plain view.  We affirm.

Background.  We summarize the judge's comprehensive findings of fact drawn from the evidentiary hearing[1] on the

_____

[1] Two police officers and the defendant's former girlfriend testified at the motion hearing.  The judge credited the officers' testimony and did not credit the girlfriend's testimony.

motion to suppress.  On September 14, 2020, police officers received a dispatch regarding a domestic dispute involving an unwanted guest and responded to the subject address.  An officer (responding officer) knocked on the door of the home, and a person "answered" the knock and advised the responding officer that "he was the primary resident of the home and that his father was the owner of the home."  Three other people came out of the home including the defendant and the defendant's girlfriend.  These "parties began bickering in the presence of [the responding officer] about stolen property."  The responding officer determined that the defendant and his girlfriend were accused of stealing property, and that they both were renting or staying in a room in the home.  The parties "were upset with each other" and their interaction was "elevated."

At some point, the girlfriend asked the responding officer if she could go back inside the home to retrieve her cell phone.  The responding officer replied, "Sure; I'm going to go along with you."  The girlfriend, without any hesitation, "agreed" by saying, "Yes, OK."  The responding officer accompanied the girlfriend inside the home "in order to protect the property inside" as she and the defendant "were being accused of theft," and "he did not want her to be by herself inside of the house."

The responding officer followed the girlfriend into the home and then into a bedroom.  The girlfriend told him that she

shared this bedroom with the defendant.  While standing in the center of the room, the responding officer saw a syringe in plain view[2] as well as two plastic containers containing white and brown powdery substances in cut off bags consistent with illicit drugs.  The responding officer did not "have to move anything in order to find these items," and did not open the containers.  After the girlfriend denied ownership of the contraband, the responding officer "collected the items and went back outside" with the girlfriend.  The defendant admitted that the items belonged to him stating, "It's mine, it[']s cocaine." The defendant was placed under arrest, given Miranda warnings, and then consented to the officers searching the bedroom.  The officers recovered marijuana, pills, fentanyl, packaging materials, a scale, and a ledger.

That same day, a complaint issued in the District Court charging the defendant with various drug offenses including a count of trafficking in fentanyl and multiple counts of possession with intent to distribute controlled substances. More than a year later, the defendant filed his motion to suppress.  The judge held an evidentiary hearing on the motion to suppress, and on May 13, 2022, the judge issued a written decision denying the motion.  The defendant timely filed a

---

[2] We discuss the responding officer's testimony regarding his observations in more detail below.

3

notice of appeal and obtained leave from a single justice of the Supreme Judicial Court to appeal from the May 13, 2022, order denying the motion.  See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017).[3]

Discussion.  1.  Consent.  The defendant argues that the girlfriend "merely 'complied' with and acquiesced to" an assertion of apparent police authority and thus the responding officer did not obtain voluntary consent to enter the home.  We disagree.  To demonstrate consent for a warrantless entry, the Commonwealth must show "consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority" (quotation and citation omitted).  Commonwealth v. Voisine, 414 Mass. 772, 783 (1993).  "The voluntariness of an individual's consent to a warrantless entry is an issue of fact, and must be examined in light of the totality of the circumstances of the case."  Commonwealth v. Rogers, 444 Mass. 234, 238 (2005).  "Under a totality of the circumstances analysis, such as that employed to determine the voluntariness of consent, each case necessarily turns on its facts."  Id. at 242.

---

[3] The defendant's subsequent motion to reconsider was denied.  The defendant did not appeal from the denial of the motion to reconsider and thus it is not before us.

4

Here, the girlfriend not only agreed to have the responding officer go with her, but did so without hesitation.[4]  See generally J.A. Grasso, Jr., Suppression Matters Under Massachusetts Law § 11-3[e] (2025 ed.) ("consent can be expressed in words, or it can be implied from a person's conduct").  Furthermore, the responding officer "did not utilize trickery or threats to gain entrance to the dwelling." Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976).  Moreover, context is critical in this factual determination.  See Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 93 (2010) (voluntariness of individual's consent to warrantless entry is issue of fact examined in light of totality of circumstances).  See also Commonwealth v. Ware, 75 Mass. App. Ct. 220, 230-231 (2009).  Here, it was the girlfriend who asked the responding officer if she could reenter the apartment.  This was so because the police were responding to a call regarding a "domestic dispute" in which the girlfriend and defendant "were being accused of theft" by the other residents.  In these circumstances, it was reasonable for the girlfriend to consent to the officer accompanying her both for her safety and to avoid escalation or further accusations relating to the property

_____

[4] There is no dispute that the girlfriend was living at the home and had authority to give valid consent to the entry.  See generally Voisine, 414 Mass. at 783.

5

within the home.[5]  Therefore, in this limited factual context, we cannot say that the judge erred in concluding that the girlfriend gave implied consent and was not "merely acquiescing" to a claim of lawful authority.[6]  See Walker, supra.[7]

2.  Plain view.  The defendant next claims, in essence, that the judge erred in finding that the plastic containers (with drugs therein) were in plain view because the responding officer could neither recall nor specify the precise location of

---

[5] We note that the judge not only found that the girlfriend consented to the entry but also found that the responding officer accompanied her inside of the home "in order to protect the property inside . . . and he did not want her to be by herself inside of the house."  The record supports these findings.

[6] The defendant correctly notes that there was no evidence that the responding officer advised the girlfriend of her right to refuse to consent to entry.  Nonetheless, "[t]he fact that a person is not informed by the police that he has an unqualified right to refuse to consent to an entry or search is 'a factor to be taken into account' on the issue of voluntariness, but is by no means determinative of that issue."  Walker, 370 Mass. at 555, quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-249 (1973).

[7] We further note the chaotic nature of the scene, the allegations of theft against the girlfriend, and the dispatch relating to "a domestic dispute regarding an unwanted guest." In light of the allegations of stolen property made in front of the responding officer, he had reasonable suspicion (if not probable cause) at a minimum to believe that the defendant or the girlfriend had committed a crime.  However, because the judge did not err in finding that the girlfriend voluntarily consented to the search, we need not evaluate or resolve whether probable cause and exigent circumstances existed as an alternative basis to justify entry into the home.  See generally Commonwealth v. Sueiras, 72 Mass. App. Ct. 439, 442-443 (2008).

the containers.  As the defendant argued in his brief, "[w]ithout evidence as to where [the responding officer] observed the plastic containers, there is no indication that they were in fact in plain view."  The claim is unavailing.

"Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  Commonwealth v. D'Amour, 428 Mass. 725, 730-731 (1999), quoting Commonwealth v. Santana, 420 Mass. 205, 211 (1995).  In addition, "[o]ur cases also have required that the police come across the item inadvertently."  Commonwealth v. Balicki, 436 Mass. 1, 8 (2002), quoting D'Amour, supra at 731.

Here, the responding officer testified that he saw, in the bedroom and in plain view, a syringe on the bed, a bag of syringes on the floor, and two plastic containers on a bed, one which contained a white and brown substance consistent with a controlled substance.  On cross-examination and on redirect examination, the responding officer clarified, by adopting the summary in his police report, that he saw the plastic containers, in plain view, on the bedroom floor.  He did not move any items or open any containers.  In these circumstances, where the judge credited the responding officer's testimony, all of the requisites for a plain view search were satisfied

(whether he saw the contraband on the floor or the bed), and we have little difficulty concluding that the responding officer properly seized the drugs.  See Santana, 420 Mass. at 211.

Order denying motion to suppress affirmed.

By the Court (Massing, Neyman & Smyth, JJ.[8]),

Clerk

Entered:  June 3, 2026.

---

[8] The panelists are listed in order of seniority.